IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| DEMETRIUS MOSLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 324-056 |
| | ) | |
| ANDREW MCFARLENE, Warden; | ) | |
| ARLENE HUNT, Unit Manager; LT. | ) | |
| CHAMBERS; SGT. WRIGHT; MR. | ) | |
| RICKEY WILCOX; MS. BEVERLY | ) | |
| MURRAY; CHIEF COUNSELOR | ) | |
| JOHNSON; MS. YA-KENDAL | ) | |
| WOODARD; MR. JIMMY KELLOM; | ) | |
| MR. DARRELL WOOTEN; MS. TAJUANA | ) | |
| AJEROH; ADREAN ELLSWICK; | ) | |
| SERGEANT RODNEY TUCKER; and MR. | ) | |
| KENDRIC JACKSON, | ) | |
| | ) | |
| Defendants.[1] | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, incarcerated at Telfair State Prison in Helena, Georgia, filed this case pursuant to 42 U.S.C. § 1983. He is proceeding *pro se* and *in forma pauperis* ("IFP"). Plaintiff filed several motions seeking injunctive relief, (doc. nos. 10, 15, 20, 45), a "Motion to Reconsider 'Legal Error' or 'The Defendants Involved with Discovery Related Material,'" (doc. no. 30), and

---

[1] The Court **DIRECTS** the **CLERK** to update the list of Defendants in accordance with the caption on this Order, which is consistent with Plaintiff's second amended complaint. (Doc. no. 11.) Because the Court has not yet received a third amended complaint in accordance with the Court's December 9, 2024 Order granting Plaintiff's motion to amend, Plaintiff's second amended complaint is the operative pleading. (See doc. no. 47; doc. no. 11; see also doc. no. 9.)

a Motion for Default Judgment, (doc. no. 34).  For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Plaintiff's motions be **DENIED**.

I.  **Motions for Injunctive Relief**

Plaintiff has filed four motions for injunctive relief concerning various topics.  (Doc. no. 10, 15, 20, 45.)  In his first motion for injunctive relief, Plaintiff notes he has been housed in isolation for several months, describes the locks on his cell as partially broken and "inadequate," and explains the cell has been "pried open" on occasion.  (Doc. no. 10, pp. 1-2.)  He also explained the light in his cell is on twenty-four hours a day, is very bright, and his cell is the only cell that does not allow the inmate to control the on/off switch.  (Id. at 2.)  He further notes prison officials did not abide by Georgia Department of Corrections ("GDC") policy when assigning him to administrative segregation.  (Id. at 2-5.)  Plaintiff requests the Court order Defendant Warden McFarlene and other unspecified prison officials follow GDC policy, repair the locks and light in his cell, and not cause Plaintiff any physical, emotional, or reputational injury.  (Doc. no. 10, pp. 4-5.)

In his second motion seeking injunctive relief, Plaintiff alleges, without any factual detail, unspecified defendants committed the following violations of Georgia law: "(1) breach of fiduciary duty, (2) conspiracy to commit a crime[,] (3) false imprisonment under color of legal process, (4) false statements and writings."  (Doc. no. 15, p. 1.)  For these alleged violations, Plaintiff demands immediate reimbursement of $6,280 to his prison trust fund account.  (Id.)  Plaintiff also requests the Court order Defendants to abide by GDC policy.  (Id. at 3.)  Plaintiff also appears to request the Court enjoin prison officials from assigning transgender inmates as Plaintiff's cellmate.  (Id.)

Plaintiff's third motion for injunctive relief requests medical testing and treatment following an altercation with an HIV-positive inmate as described in his second amended complaint. (Doc. no. 20, p. 2; see also doc. no. 11, p. 14.) Plaintiff also requests the Court enjoin all Defendants from "oppressing, extorting and violating Plaintiff's human rights and dignity; taking Plaintiff's visitations[,] telephone, and packages without procedural due process . . . [and] increasing the commissary [prices]." (Doc. no. 20, p. 4.) Plaintiff also requests the Court order prison officials to process Plaintiff's security classification and print out Plaintiff's prison account receipts. (Id.)

In his most recent motion for injunctive relief, Plaintiff requests the Court order Dr. Cheney, the prison doctor, to conduct "EMG testing" of various parts of Plaintiff's body where he experiences pain, perform a full-body x-ray, and provide other forms of medical testing and treatment as is necessary for Plaintiff's well-being. (Doc. no. 45, pp. 1-2.) Plaintiff also requests his prison file be updated to require handcuffing in the front of his body due to nerve damage in his left arm and allow Plaintiff access to a high-calorie diet. (Id. at 2-3.) Plaintiff also requests prison officials be required to follow GDC policy concerning the passing of meals through the slots on cell doors. (Id. at 3.)

A party moving for injunctive relief must show the following: "(1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998) (citing All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc., 887 F.2d 1535, 1537 (11th Cir. 1989)). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly

establishes the 'burden of persuasion' as to the four requisites." All Care Nursing Serv., Inc., 887 F.2d at 1537 (citing United States v. Jefferson Cnty., 720 F.2d 1511, 1519 (11th Cir. 1983)).

Supplementing the elements listed above, the Prison Litigation Reform Act ("PLRA") places additional restrictions on preliminary injunctions in the prisoner civil rights context. While the PLRA permits preliminary injunctive relief "to the extent otherwise authorized by law," it requires the relief "be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2). Moreover, "[t]he court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief." Id.

As a preliminary matter, the Court lacks jurisdiction to enter a restraining order or injunction against those who are not parties to the lawsuit. Holmes v. Williams, No. 6:15-cv-12, 2015 WL 4429092, at *8 (S.D. Ga. July 20, 2015) (citing In re Infant Formula Antitrust Litig., MDL 878 v. Abbott Labs., 72 F.3d 842, 842-43 (11th Cir. 1995)). Plaintiff seeks action by Dr. Cheney, who is not and has never been a party to this case, as well as unspecified prison officials. The Defendants are unable to provide much of Plaintiff's requested injunctive relief. Further, the Court cannot provide injunctive relief where the requested relief bears no connection to the claims brought by Plaintiff's operative pleading. See Califano v. Yamasaki, 442 U.S. 682, 702 (1979) ("[T]he scope of injunctive relief is dictated by the extent of the violation established."); Benning v. Comm'r, Ga. Dep't of Corr., 71 F.4th 1324, 1340 (11th Cir. 2023), *cert. denied sub nom.* Benning v. Oliver, 144 S. Ct. 1457 (2024) ("Given the complete lack of connection between the claims pled and the injunctive relief requested, the district court did not err in ruling that such relief was overbroad and inappropriate."). Accordingly, to the extent Plaintiff's requested injunctive

4

relief is wholly unrelated to the claims pled in his second amended complaint, he is not entitled to the relief he seeks.

Concerning the second element, Plaintiff is unable to demonstrate irreparable injury in the absence of an injunction. In order to satisfy the irreparable injury requirement, Plaintiff must show the threat of injury is "neither remote nor speculative, but actual and imminent." Northeastern Fla. Chapter of Ass'n of General Contractors of Am. v. City of Jacksonville, Fla., 896 F.2d 1283, 1285 (11th Cir. 1990) (citation omitted); see also Church v. City of Huntsville, 30 F.3d 1332, 1337 (11th Cir. 1994) (noting that, in order to obtain injunctive relief, a plaintiff must show "a real and immediate – as opposed to a merely conjectural or hypothetical – threat of future injury."). As to his claims about the inadequate lock on his cell door, Plaintiff offers only unsubstantiated and generalized allegations that the lock poses a risk his safety. Plaintiff does not provide any information to suggest there is an actual, imminent, or known risk to his safety posed by any person or that any person has actually entered his cell because the lock is broken while he has been housed there. Thus, the possible harm is only speculative and remote.

Concerning Plaintiff's various requests for medical testing and treatment, he also fails to satisfy the irreparable injury requirement. (Doc. no. 20, p. 2; doc. no. 45, pp. 1-2.) Plaintiff offers only unsubstantiated allegations and assessments of his medical conditions and what kind of treatment he thinks he needs. Indeed, Plaintiff concedes his complaints amount to a disagreement with prison officials over a diagnosis or course of treatment, which does not support a claim of deliberate indifference, let alone a finding that there is a substantial threat Plaintiff will suffer irreparable injury if the injunction is not granted. (Doc. no. 45, p. 2 (explaining Dr. Cheney has chosen an easier treatment plan than the extensive testing and treatment Plaintiff demands)); see Smith v. Fla. Dep't of Corr., 375 F. App'x 905, 910 (11th

5

Cir. 2010); see also Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) ("Where a prisoner has received . . . medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments.").

Plaintiff also plainly fails to demonstrate irreparable injury will be suffered unless an injunction issues as to his remaining requests for injunctive relief, which include: repairing the light in his cell; reimbursement of $6,280 to his prison account; fixing commissary prices; processing his security classification; printing receipts; requiring handcuffing in front of his body; giving him a high-calorie diet; precluding Defendants from assigning of transgender inmates to Plaintiff's cell, "oppressing, extorting and violating Plaintiff's human rights and dignity," revoking Plaintiff's phone, mail, and visitation privileges, and causing Plaintiff any physical, emotional, or reputational injury; and, finally, requiring Defendants to abide by GDC policies on various topics. (Doc. no. 20, p. 4; see also doc. nos. 10, 15, 20, 45.) Plaintiff provides no detail to support a claim irreparable injury will be suffered unless an injunction issues as to any of the forms of relief sought in these requests. Instead, to the extent Plaintiff claims any harm may befall him in the absence of an injunction, such harms are speculative and remote. The Court cautions Plaintiff that motions for injunctive relief are not the appropriate vehicle by which to air his various, day-to-day grievances about his experience at Telfair State Prison.

Plaintiff also completely fails to address, in any of his motions, whether the threatened injury to him outweighs whatever damage the proposed injunction may cause the opposing party and whether if issued, the injunction would be adverse to the public interest. Simply put, the law is well settled that federal courts should refrain from unwarranted interference in the day-to-day operations of prisons. See Bell v. Wolfish, 441 U.S. 520, 547 (1979). Plaintiff's various requests detailed *supra* would require the Court's interference in nearly every aspect of the operation of

Telfair State Prison. Thus, under the circumstances presented by this case, the Court will not insert itself into the decision-making processes of day-to-day operations at Telfair State Prison to effectuate Plaintiff's various and unwarranted requests for injunctive relief.

For the sake of completeness, as to Plaintiff's requests the Court order Defendants to abide by GDC policy, state law, and federal laws, the order Plaintiff seeks would serve little purpose, as it would amount to nothing more than an instruction to "obey the law" – a duty already in place. See Burton v. City of Belle Glade, 178 F.3d 1175, 1201 (11th Cir. 1999) (refusing to issue order which would amount to broad instruction to simply "obey the law").

Accordingly, the Court **REPORTS** and **RECOMMENDS** Plaintiff's motions be **DENIED**. (Doc. nos. 10, 15, 20, 45.)

**II.     Motion for Default Judgment**

Also before the Court is Plaintiff's Motion for Default Judgment, in which he asserts a summons and complaint were served on Defendants on September 20, 2024, the date his second amended complaint was received by the Clerk of Court; Defendants did not answer; default was entered on October 10, 2024; Defendants have still failed to appear; and therefore, judgment should be entered in his favor and he should be awarded monetary damages.[2] (Doc. no. 34, pp. 1-2.)

"Under Federal Rule of Civil Procedure 55, a court may enter default judgment against a [defendant] when (1) both subject matter and personal jurisdiction exist, (2) the allegations in the complaint state a claim against the [defendant], and (3) the [plaintiff] shows the damages to which [he] is entitled." Progressive Mtn. Ins. Co. v. Taswell, CV 121-114, 2022 WL 1036776, at * (S.D.

---

[2] Despite Plaintiff's contentions, there has been no docket activity to evidence service of process or entry of default on September 20, October 10, or any other day since this case was filed. (See dkt.)

7

Ga. Apr. 6, 2022) (Hall, C.J.).  By its terms, Federal Rule of Civil Procedure 55 contemplates two steps before entry of a default judgment.  First, the party seeking a default must have the Clerk enter the default by submitting an "affidavit or otherwise" showing that the defaulting party "has failed to plead or otherwise defend."  Fed. R. Civ. P. 55(a).  Thereafter, the moving party may then seek entry of a default judgment under Rule 55(b).  Under Rule 55(b)(1), the Clerk is directed to enter a default judgment upon request of the plaintiff when all of the following conditions are present:  (1) the claim is for a sum certain, or for a sum that can by computation be made certain, which is supported with an affidavit showing the amount due; (2) the default is for want of appearance; and (3) the defendant is neither an infant nor an incompetent person.  When a claim is not for a sum certain, application for default judgment must be made to the Court under Rule 55(b)(2).  See Jackson v. Equifax Info. Servs., LLC, CV 119-096, 2021 WL 4851308, at *1 (S.D. Ga. Oct. 18, 2021).

This is Plaintiff's first filing regarding default, and therefore by definition, he is not entitled to the default judgment he seeks.  Moreover, a default judgment is available under Fed. R. Civ. P. 55 only when a party has failed to plead or otherwise defend as provided by the Federal Rules.  However, a defendant is not required to file a pleading or otherwise defend himself unless and until he is properly served.  See Varnes v. Local 91, Glass Bottle Blowers Ass'n of the United States and Canada, 674 F.2d 1365, 1369-70 (11th Cir. 1982) (prohibiting entry of default on amended complaint that was not properly served).  Plaintiff's complaint has not yet been screened 28 U.S.C. § 1915A(b),[3] let alone service of process ordered or default entered.  Thus, no Defendant

---

[3] As noted *supra* note 1, Plaintiff was granted leave to amend his complaint for a third time, but the Court has yet to receive his third amended complaint for screening.  Should Plaintiff fail to file a third amended complaint, the Court will screen his second amended complaint in due course, as explained in the Court's December 9, 2024 Order.  (See doc. no. 47.)

has been under any obligation to appear in this case or respond to any pleading, and the motion requesting a default judgment should be **DENIED**. (Doc. no. 34.)

### III. Motion to Reconsider "Legal Error" or "The Defendants Involved with Discovery Related Material"

Plaintiff also filed a "Motion to Reconsider 'Legal Error' or 'The Defendants Involved with Discovery Related Material.'" (Doc. no. 30.) Upon review of Plaintiff's filing, it is entirely unclear what, if any, action by the Court Plaintiff requests in his motion. (Id.) Accordingly, the Court recommends Plaintiff's motion be denied for failure to comply with Federal Rule of Civil Procedure 7. (Doc. no. 30); Fed. R. Civ. P. 7 (requiring motions "state with particularity the grounds for seeking the order" and "state the relief sought").

However, for the sake of completeness, and to the extent the Court can discern Plaintiff's arguments, he appears to request reconsideration of the decision made by unspecified Telfair State Prison officials to house him in administrative segregation following a disciplinary incident. (See doc. no. 30.) Accordingly, *liberally* construing Plaintiff's motion, the Court construes it as a motion for injunctive relief seeking a Court order requiring Plaintiff be housed in a less restrictive unit.

As explained *supra* Section I, "[a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the 'burden of persuasion' as to the four requisites." All Care Nursing Serv., Inc., 887 F.2d at 1537 (citing Jefferson Cnty., 720 F.2d at 1519). Plaintiff has failed to meet his burden as to any of the four requirements with his entirely incoherent motion, and moreover, Plaintiff's request would require the Court's unwarranted interference in Telfair State Prison operations. Moreover, Plaintiff's request to have the Court interfere with Plaintiff's housing assignments or privilege restrictions fail to satisfy the PLRA's

requirements for injunctive relief, as such relief would not be "the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2).

Accordingly, at this stage of the case, the Court will not insert itself into the decision-making process of where to house a prisoner. See Walker v. Smokes, No. 6:15-CV-57, 2018 WL 3241926, at *12 (S.D. Ga. July 3, 2018), *adopted by* 2018 WL 3715830 (S.D. Ga. Aug. 3, 2018) ("At this early stage, the Court cannot ascertain whether it would be appropriate for this Court to order Defendants to release Plaintiff from Tier II to protective custody . . . . The Court recognizes that such a decision lies squarely under the purview of "prison administration", and this Court is loath to interfere with the administrative processes of a prison."); Brown v. Anglin, No. 5:15-CV-294, 2016 WL 6803133, at *2 (N.D. Fla. June 27, 2016), *adopted sub nom.* Brown v. Holland, 2016 WL 6780319 (N.D. Fla. Nov. 15, 2016) ("As it concerns his apparent request for a prison transfer, especially at this early stage of the litigation, granting the injunction would require the federal courts to interfere in the administration of the jail and take over the management or treatment of a single inmate. Federal courts should normally be reluctant to interfere with matters of internal prison administration since they are ill-equipped to do so.").

Thus, to the extent Plaintiff's motion can be construed as a request for injunctive relief concerning his assignment to administrative segregation, Plaintiff is not entitled to the relief he seeks and the Court **REPORTS** and **RECOMMENDS** Plaintiff's motion be **DENIED**. (Doc. no. 34.)

IV.   **Conclusion**

In sum, Plaintiff has failed to satisfy all of the required elements for obtaining the injunctive relief he seeks and has prematurely requested default judgment. Thus, the Court **REPORTS** and **RECOMMENDS** Plaintiff's motions seeking injunctive relief, (doc. nos. 10, 15, 20, 45), "Motion

to Reconsider 'Legal Error' or 'The Defendants Involved with Discovery Related Material,'" (doc. no. 30), and Motion for Default Judgment, (doc. no. 34), be **DENIED**.

SO REPORTED and RECOMMENDED this 13th day of January, 2025, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA